## CITY OF GAINESVILLE v. AMAROSE.

### No. 12915.

Court of Civil Appeals of Texas. Fort Worth.

Jan. 6, 1934.

Rehearing Denied Feb. 17, 1934.

Ray Winder, of Gainesville, for appellant.

John A. Atchison and Cecil Murphy, both of Gainesville, for appellee.

LATTIMORE, Justice.

The state highway commission, building a highway from the Red river, which highway was to pass through the city of Gainesville, an incorporated city of more than 5,000 inhabitants, requested said city, appellant, to procure for the state of Texas a certain tract of land within the city limits of said city as a part of said highway. The appellant, by a trade, procured said land from the owner, and same was deeded to the state of Texas in February, 1931. This tract was a part of a larger tract of land all tenanted by the vendor of appellee. Appellee sued the city for negligent delay in building the road, claiming that appellant induced him to remove his filling station and tourist camp from the land deeded to the state of Texas and onto the remainder of the leased tract on the representation that the new road in front of same would be completed within ten days. Such new road was not begun until months later and not completed until March, 1932. The jury found such delay was not necessary.

Let us first fix the relationship to this appellee. Cross, the owner and landlord, knew when he sold the strip of land that appellant was procuring the same at the instance of the state highway commission and that the latter would control the building of the street. Amarose, the appellee, knew when he bought the lease in August, 1931, from the tenant of Cross that this strip of land had been acquired for such street, and on September 22, 1931, just eight days before his lease expired, he knew when he consented to be moved that the highway department was to build the road.

None the less, we believe the duty of appellant to its citizens in regard to the public streets within the corporate limits was not assignable. As between the city and the state, the state was rightfully engaged. The control of the streets of Gainesville is exclusively in appellant. Constitution of Texas, art. 3, § 52. However, with the consent of the city, the state could construct the highway within the city limits. State v. Jones, 18 Tex. 874; Breckenridge v. Stephens County, 120 Tex. 318, 40 S.W.(2d) 43. The city of Gainesville is still a part of the state of Texas, and the state funds can be used within its confines if those governing agencies of the city to whom the state has surrendered its functions in this particular consent. But, so far as Amarose is concerned, he can expect and demand of such

city government that it retain upon its shoulders the responsibility which its citizens have imposed by their incorporation. Klein v. City of Dallas, 71 Tex. 280, 8 S. W. 90; Patterson v. Austin (Tex. Civ. App.) 29 S. W. 1139. We thus conclude that the appellant may not hold the state highway department between it and liability. Coryell County v. Burke (Tex. Civ. App.) 4 S.W.(2d) 283.

■■ However, the appellant had the right to possession of this strip of land on October 1, 1931, and appellee would have been at most only a licensee in possession thereafter. Appellant, in requiring appellee to vacate, was doing prematurely what it had a right, absent the matters hereinafter discussed, to do on and after October 1, 1931; and, absent the same, appellee, being ousted from said strip of land after October 1, 1931, and removing to the leased premises adjoining the strip on the west where such improvements were in fact so moved, could not have compelled appellant to furnish him, in its municipal role as custodian of the public streets, a public street connecting him to the already existing highway.

■ All the above is without consideration of what the agreement of the city was in regard to such removal. Appellee pleaded: "That contemporaneously with the execution and delivery of said deed of right-of-way it was orally agreed between the said Paul Cross (owner) and defendant that possession of said strip of land was not to be immediately delivered to the State of Texas, but was to be retained by the said Paul Cross and his lessee and assigns, until work was actually started in good faith on the new road in front of the premises owned by him, and that defendant would then remove the filling station and other improvements situated on said strip of land and relocate them on the above described premises of the said Paul Cross just west of and abutting on said right-of-way strip, and then grade and gravel the premises immediately in front of said tourist camp and filling station, and place the same in as good condition and as accessible and convenient to the customers of said business and the travellers along the street and highway in front thereof as was the approach to said business on January 19, 1931. That on or about the 22nd of September, 1931, the defendant, through its agent and City Manager, Louis House, announced to plaintiff that it was ready to move the said filling station and other improvements, and promised plaintiff that construction of said new road would start at once and that it would have plaintiff again in business within ten days from such date. That plaintiff relied upon such promises, and with such understanding, plaintiff agreed that defendant might proceed, and it did start to work and completed the removal of the said improvements about October 22, 1931, but work on the construction of the new road was not commenced until March 2, 1932." This oral contract does not import a consideration. The deeds do not recite any such consideration, nor does the petition attempt to say that the promise was any part of the consideration for the deed to the state of Texas for the strip of land. It does say that appellee, relying upon that promise of appellant, as well as an additional one made September 22, 1931, to the effect that it would have appellee "in business again in ten days," allowed appellant to move his improvements to the west and adjacent to the deeded strip of land. Assuming all this to be true, the damages of appellee for such misrepresentation would be no more than the losses sustained by not remaining at the old location until October 1, 1931.

The judgment of the trial court is reversed, and the cause is remanded.