Hubert R. HALE et al., Appellants,

v.

CITY OF DALLAS, Appellee.

No. 15596.

Court of Civil Appeals of Texas.

Dallas.

April 29, 1960.

Rehearing Denied May 27, 1960.

Carter, Gallagher, Jones & Magee and Morton A. Rudberg, Dallas, for appellants.

H. P. Kucera, City Atty., N. Alex Bickley, John W. Davidson and Robert B. Ward, Asst. City Attys., Dallas, for appellee.

YOUNG, Justice.

Rule 166–A, Tex.Rules of Civil Procedure Summary Judgment Proceedings. The suit in trial court was by Hubert R. Hale and wife in their own behalf and as next friend for minor daughter to recover damages for personal injuries resulting to the child and Mrs. Hale, when an automobile driven by Mrs. Hale with daughter as a passenger went out of control on Harry Hines Boulevard, within Dallas City limits, due to a chug hole on shoulder of the highway existing as a result of alleged negligent maintenance by the municipality. Answer of defendant city was followed by motion for summary judgment containing affidavit and exhibits to effect that pursuant to Art. 6663, Vernon's Ann.Civ.St. and contract with the State of Texas and State Highway Commission of August 1951 the latter had assumed sole responsibility for maintenance of said highway; with no duty devolving upon defendant city to maintain or repair the highway shoulder at such point and hence with no liability therefor. Upon hearing of the motion, same was sustained with final judgment to effect that plaintiffs take nothing by their suit, followed by this appeal.

In said motion, the provisions of Art. 6673–b were pled as authority for the contract in question, styled "Municipal Maintenance Agreement" between the State of Texas and the City of Dallas. Its subject matter included State Highway 77 known as Harry Hines Boulevard, a public thoroughfare extending northerly from downtown Dallas; the place where the roadway was claimed as negligently maintained being City Block 12300 and admittedly a section of said Highway 77. This contract established the responsibilities between the State of Texas and City of Dallas as regards maintenance of State Highways within Dallas City limits; the State Highway Commission agreeing, among other things, to maintain the surface and shoulders of highways covered by the contract.

In turn, with regard to State Highway within corporate limits, the city agreed to be responsible for the "property rights, life, health, etc.", of adjacent owners and dwellers; to furnish and maintain street lights, traffic control signs and signal devices, drainage, handling of traffic during emergencies, shrubbery, cleaning and sweeping of streets, and maintaining all areas not described as responsibility of the Highway Commission. The agreement provided further that, without State Highway Department concurrence the city could not disturb or replace street improvements or cut the pavement or any part of a street maintained by the Highway Commission for purpose of installing, connecting or maintaining utility lines, or for *other purposes*. Appellants filed no reply or controverting affidavit to said motion for summary judgment.

The court's conclusion that no genuine issue of fact was presented in pleading of the parties, affidavit of defendant and exhibits was based on findings in part stating:

" * * * that the Defendant City of Dallas had no authority or duty on the date of plaintiffs' alleged accident to maintain or repair that portion of Harry Hines Boulevard upon which plaintiffs' accident allegedly occurred.

"3. That the Defendant City of Dallas owed no duty to the Plaintiffs to repair or maintain that portion of Harry Hines Boulevard which plaintiffs have alleged to be defective in their Original Petition."

Appellants' single point of appeal asserts error of court in grant of motion for summary judgment because "the matters set forth in said motion and the exhibits attached thereto are not sufficient under the law of this State to support judgment for the defendant." Answering counter-point of the city affirmed the trial court's action.

"Because: (1) Under the Statutes of Texas, the State Highway Commission had assumed authority, jurisdiction, control and the duty to maintain and repair that portion of U. S. Highway 77 where appellants' accident occurred; and, (2) No duty to maintain or repair on the part of appellee existed absent such authority to undertake maintenance or repairs."

■ For purpose of this discussion, the particular section of State Highway 77 may be characterized as a public street, or thoroughfare of defendant city. As such, the following cardinal rules are applicable:

"The highways of the state, including streets of cities, belong to the state, and the state has full control and authority over them. They 'are the property of and for the use of the state, which through its Legislature, has absolute control over same, which control it may or may not, from time to time, delegate to the local authorities.' Robbins v. Limestone County, 114 Tex. 345, 268 S.W. 915; Travis County v. Trogdon, 88 Tex. 302, 31 S.W. 358; Delta County v. Blackburn, 100 Tex. 51, 93 S.W. [419] 422; Coleman v. Thurmond, 56 Tex. 514; West v. City of Waco, (Sup.Ct.) [116 Tex. 472] 294 S.W. 832."

In this connection our Supreme Court in the earlier case of Robbins v. Limestone County, 114 Tex. 345, 268 S.W. 915, 918, had dealt with Art. 6673, Acts 38th Legislature, 2d Called Sess., 1923, c. 75, holding in part:

"The establishment of public highways being primarily a function of government belonging to the state, the right to establish them resides primarily in the Legislature, and, in the absence of constitutional restrictions, the Legislature may exercise that right direct or delegate it to a political subdivision of the state, or to such other agency or instrumentality, general or local in its scope, as it may determine. The exercise of this right by a political sub-

division of the state, or by local officers, is founded upon statutory authority therefor. The Legislature may exercise possession of public roads and control over them, by and through such agencies as it may designate. * * *"

As an example of delegation by the State to cities of "exclusive dominion, control, and jurisdiction in, over and under the public streets, avenues, alleys, highways and boulevards, and public grounds of such city * * *", See Art. 1175, §§ 12 & 16, V.A.C.S. (commonly known as the Home Rule Statute). And it is usually with reference to this statute that the duty of a municipal corporation exists "to exercise ordinary care to maintain its streets and sidewalks in a reasonably safe condition for public use * * *" and "liable in damages to persons who sustain injury by reason of failure to perform that duty". 39 Tex.Jur., Streets, pp. 658, 659.

But coming closer to the law question here presented, we are wholly concerned with Title 116, V.A.C.S., Highways, the defendant city's jurisdiction and control over this state designated highway, and its liability for negligent maintenance under the instant facts and circumstances; Art. 6673 to 6674w–5 being primarily involved. Particularly relevant to our problem is the recent Supreme Court case of State of Texas v. City of Austin et al., 331 S.W.2d 737, 741, holding in part:

"* * * For many years the cities and towns of Texas have enjoyed exclusive dominion and control over the streets, alleys and other public places within their respective corporate limits, but this was pursuant to a statutory delegation of authority. See Articles 1016, 1146 and 1175, Vernon's Ann.Tex.Civ.Stat. The Legislature acting for the state has primary and plenary power to control and regulate public roads and streets. It may delegate that power to counties or municipal corporations, but such a grant of authority may be revoked or modified at any time. See Robbins v. Limestone County, 114 Tex. 345, 268 S.W. 915; West v. City of Waco, 116 Tex. 472, 294 S.W. 832; 64 C.J.S. Municipal Corporations, §§ 1686, 1689. The statutory power of cities and towns over public ways within their corporate limits has now been abridged by Sections 2 and 5 of House Bill 179. See Articles 6674w–1 and 6674w–5, Vernon's Ann.Tex.Civ.Stat. It is there provided that the State Highway Commission shall have the power to construct, maintain and operate designated state highways in any area of the state, whether in or outside the limits of any municipal corporation, and that the exercise of such power shall qualify and render inexclusive the dominion of any city or town with respect to the specific streets, alleys or other public ways affected thereby."

See also 21 Tex.Jur., Highways, §§ 113, 123, pp. 651, 662.

In 1917 by enactment of Article 6663 the Legislature provided for a uniform system of state highways, vesting control thereof in the State Highway Commission, viz.:

"The administrative control of the State Highway Department, hereinafter called the Department, shall be vested in the State Highway Commission, hereinafter called the Commission, and the State Highway Engineer. Said Department shall have its office at Austin where all its records shall be kept."

Further power was granted by Art. 6673 as follows:

"The Commission is authorized to take over and maintain the various State Highways in Texas, and the counties through which said highways pass shall be free from any cost, expense or supervision of such highways. The Commission shall use the

automobile registration fees in the State Highway Fund for the maintenance of such highways, and shall divert the same to no other use unless the Commission shall be without sufficient funds from other sources to meet Federal aid to roads in Texas, and in such case the Commission is authorized by resolution to transfer a sufficient amount from such fund to match said Federal aid. Acts 1923, p. 161; Acts 2nd C.S.1923, p. 71."

In 1939 the Legislature passed Art. 6673–b, for the first time authorizing the state and city to contract with one another, fixing the control and responsibilities of each, viz.:

"The State Highway Commission is hereby authorized and empowered, in its discretion, to enter into contracts or agreements with the governing bodies of incorporated cities, towns, and villages, whether incorporated under the home rule provisions of the Constitution, Special Charter, or under the General Laws, providing for the location, relocation, construction, reconstruction, maintenance, control, supervision, and regulation of designated State highways within or through the corporate limits of such incorporated cities, towns, and villages, and determining and *fixing the respective liabilities or responsibilities of the parties resulting therefrom;* and such incorporated cities, towns, and villages are hereby authorized and empowered, through the governing bodies of such cities, towns, and villages to enter into such contracts or agreements with the State Highway Commission." (Emphasis ours.)

In 1957, Art. 6674w was enacted stating in part

"The Legislature finds, determines and declares that the purpose of this Act is to delegate certain additional authority to the State Highway Commission * * *." Sec. 1, Vernon's Ann.Civ.St. art. 6674w–1.

"The State Highway Commission is further empowered to lay out, construct, maintain and operate any designated State Highway, now or hereafter constructed, with such control of access thereto as is necessary to facilitate the flow of traffic, and promote the * * * State, whether in or outside of the limits of any incorporated city, town or village, including Home Rule Cities, and to exercise all of the powers and procedure to it granted by existing laws and this Act for the accomplishment of such purposes and the exercise of such powers and duties; * * *."

"Subject to the foregoing limitations any order issued by the State Highway Commission pursuant to such powers shall supersede and be superior to any rule, regulation or ordinance of any department, agency or subdivision of the State or any county, incorporated city, town or village, including Home Rule Cities, in conflict therewith. * * *" Sec. 5, Vernon's Ann. Civ.St. art. 6674w–5.

"The powers granted to the State Highway Department and State Highway Commission by this Act to perform acts and exercise powers within the limits of counties, incorporated cities, towns and villages, including Home Rule Cities, may be exercised without the consent or agreement of any such county, city, town or village, including Home Rule Cities, * * * and whenever the State Highway Department or the State Highway Commission performs any act or exercises any power within the limits of any county, incorporated city, town or village, including Home Rule Cities, as authorized in this Act, such act or exercise of power shall qualify and render inexclusive the dominion of such counties, cities, towns or villages in-

cluding Home Rule Cities, with respect to the specific streets, alleys, and other public ways affected by such act or exercise of power, but only to the specific extent to which such act or the exercise of such power affects such streets, alleys and other public ways and their use."

Coming now to the point at issue, above enactments empower the State Highway Department without consent of a Home Rule City to exercise full authority, relative to control of State Highways; the Commission likewise under Art. 6673–b being empowered (and Home Rule Cities authorized) to contract with regard to the responsibilities of each in "maintenance, control, supervision, and regulation of designated State highways within or through the corporate limits of such incorporated cities * * *." Pursuant to such delegation of powers the 1951 contract executed between State and city, recited that "maintenance will be assumed by the State over the highway routes within said city in strict accordance with the Highway Commission policies as stated above, governing the maintenance of highways into and through municipalities * * *." "The State agrees * * * (2) on streets and highway routes with shoulders, to maintain the base and surface and the normal shoulders adjacent to the edges of the pavement * * *"; and that the city will do no work "involving disturbances or replacement of existing street improvements, such as cutting pavement for purpose of installing * * * utility lines or *for other purposes*" without first securing permission of the Highway District Office. (Emphasis added.)

Appellants contend that above provisions of Title 116, Highways, and contractual division of responsibilities, did not have the effect of limiting or abridging defendant's pre-existing control and jurisdiction over the highway in question; it being still under the nondelegable duty to exercise reasonable care in maintenance of its streets, for the breach of which it may be held liable in damages; citing principally in support Gabbert v. City of Brownwood, Tex. Civ.App., 176 S.W.2d 344, writ ref.; City of Gainesville v. Amarose, Tex.Civ.App., 67 S.W.2d 1054 and City of Austin v. Schmedes, 154 Tex. 416, 279 S.W.2d 326, 52 A.L.R.2d 680. These cases will be examined briefly: Gabbert's appeal is not controlling of the matter before us because there was no contract between the State and the City of Brownwood such as we have here. Corporate liability was there predicated upon alleged negligent maintenance of an open culvert within the city limits on a designated State Highway; the Eastland Court holding that transfer of jurisdiction and control of highways under Art. 6673 was with reference only to counties. Consent of the City of Brownwood for the highway construction of the culvert had been given, thereby indicating, says the Court, of retention of municipal jurisdiction over even State designated highways within its limits because the State had not taken away that power. Incidentally, Gabbert's appeal has points of close similarity to the instant case in this: It was the position of the City of Brownwood that under Arts. 6673 and 6673–b:

" * * * it could only be liable for a defect of construction or maintenance if it, under authority of said Article 6673–b, contracted or agreed with such effect; and that it had not so contracted or agreed. On the other hand, it is the position of plaintiffs that since Article 6673 *had no effect to deprive cities and towns of jurisdiction over highways within their limits, and the liability consequent upon such jurisdiction could be affected, if at all, only by a contract or agreement, as provided in Article 6673–b, the fact that no such contract or agreement had been made was conclusive of the defendant's liability for negligence.*" (Emphasis ours.) [176 S.W.2d 348.]

In the Schmedes case, supra, a city-state contract allocating responsibility with

respect to construction and operation of state highways was not involved; holding only that the city could not delegate its police powers of directing traffic to an individual (the contractor). And the case of City of Gainesville v. Amarose, supra, was decided before enactment of Art. 6674w-5 authorizing the Highway Department to exercise its powers within a Home Rule City without its consent or agreement; simply holding the city liable for representations made by its agents to plaintiff to his detriment.

Undoubtedly the Legislature, acting for the State, has primary and plenary jurisdiction and control over public streets and highways. "It may delegate that power to counties or municipal corporations, but such a grant of authority may be revoked or modified at any time." State v. City of Austin, supra. In this connection Title 116, Highways, is replete with references to paramount jurisdiction and control there vested in the State Highway Commission with respect to layout, construction, maintenance and operation of any designated State Highway. For instance, Art. 6674a defines "improvement" as including work of construction or maintenance; going further under Art. 6674q-4 and providing that "All further improvement of said State Highway System shall be under the exclusive and direct control of the State Highway Department * * *". In like context, the Legislature through Art. 6673-b has authorized a fixing of responsibility in maintenance of highways, the state-city contract in question imposing same absolutely upon the Highway Commission and limiting the cities' duty of street control to features not material here.

■ While a municipality by ordinary contract cannot relieve itself of liability regarding its streets, as in the Schmedes case, supra, it may accomplish such result, in our opinion, through Legislative sanction; and the delegation of duty of maintenance from city to state having been made pursuant to Art. 6673-b, the agreement extended not only to the parties thereto but to the general public as well. In City of El Paso v. Mendoza, Tex.Civ. App., 191 S.W.2d 102, 105, the appellate court recognized the right of a city to divest itself of a duty relative to street maintenance and repair when authorized by legislative enactment; there holding in part that "deducible from the above-cited authorities is the principle that by voluntary contract or ordinance a city cannot divest itself of the duty owing with reference to the maintenance of its streets *except under authorization of the state. *. * *. The power it exercises over its streets is in the nature of a delegated legislative power which it can not delegate without the sanction of the State of Texas, the source of such power."* (Emphasis ours.)

■ Similar contractual resumptions of authority and control by the State over its highways within city limits have been approved by other jurisdictions. In Leialoha v. City of Jacksonville, Fla., 64 So.2d 924, 925, the city was held not liable for damages sustained by a plaintiff when her car encountered a chug hole in shoulder of highway which was also a city street; the highway department having been authorized by Statute to enter into a like contract as here. The Florida Supreme Court there held:

"Section 341.64, F.S.A. was enacted in 1941, and a reading of its contents with the context, drives one to the conclusion that the legislature removed the maintenance and repair of connecting roads from municipalities to the State Road Department and in so doing, relieved the municipality of responding in damages for injuries occurring thereon * * *. These cases treat the historical liability of a municipality for tort but here we are confronted with a case in which the tort took place on a city street that the Legislature had removed from liability by placing it in the hands of the State Road Department for maintenance and

**792**

repair, so the cases relied on have no application."

In Harlan v. City of Tucson, 82 Ariz. 111, 309 P.2d 244, 249, under Statutes similar to those of our Title 116, Highways, the contract between the State through its Highway Department and City of Tucson on maintenance of streets absolved such defendant from liability to the claimant, placing same upon the State. The Arizona Supreme Court there held:

"The intent of the legislature as expressed in Articles 1 and 2, Chapter 59, A.C.A.1939, Title 18, Chapter 1, A.R.S.1956, being clear and unambiguous, the common-law duty of a city to keep its streets safe for the traveling public has been abrogated when, following the provision of section 59–205, a sufficient agreement has been entered into to designate a city street as a state highway, including a provision for maintenance by the state. There being no jurisdiction or control in the city over the intersection involved, it follows there could be no duty, and without a duty in the matter there can be no actionable negligence. * * *."

See also Griffith v. Town of Berlin, 130 Conn. 84, 32 A.2d 56; Perry v. City of Cumberland, 312 Ky. 375, 227 S.W.2d 411; Gardner v. City of Covington, 86 Ind.App. 229; 156 N.E. 830; Brunacci v. Plains Township, 315 Pa. 391, 173 A. 329; Barnett v. City of Opelousas, La.App., 13 So.2d 788; and Glover v. Town of Ponchatoula, La.App., 17 So.2d 44.

We conclude that the contract in question amounts to a reclamation of authority and control by the State over designated highways, with effect of relieving the city of certain pre-existing duties and placing them on the Highway Department; and there can be "no actionable negligence in the absence of some duty which has been neglected or violated." Independent Eastern Torpedo Co. v. Carter, Tex.Civ.App., 131 S.W.2d 125, 126; Gabbert v. City of

Brownwood, Tex.Civ.App., 176 S.W.2d 344; Turner v. Big Lake Oil Co., 128 Tex. 155, 96 S.W.2d 221.

Judgment of the trial court in rendition of summary judgment is accordingly affirmed.